UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMIRY CARLOS BORGES DIAS, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 20-11513-LTS |
| STEVEN J. SOUZA, | ) ) ) | |
| Respondent. | ) ) | |

ORDER ON HABEAS PETITION (DOC. NO. 1)
AND MOTION TO DISMISS (DOC. NO. 6)

October 13, 2020

SOROKIN, J.

Amiry Carlos Borges Dias is a citizen of Cape Verde who came to the United States legally in 2007, when he was a child. By 2015, he had lost his lawful immigration status and removal proceedings were initiated, though he was not detained. Dias was arrested and charged with a crime in June 2018; immigration officials detained him when he was released from state custody on bail a month after his arrest. An immigration judge denied Dias's applications for relief from removal on June 6, 2019. The state criminal charges were dismissed in September 2019, and the Board of Immigration Appeals ("BIA") affirmed the immigration judge's decision on November 26, 2019. With the BIA's ruling, Dias became subject to a final order of removal. He has been incarcerated at the Bristol County House of Corrections since July 2018.

It appears Immigration and Customs Enforcement ("ICE") did not begin attempting to effect Dias's removal until more than ninety days after the BIA's order.[1] The COVID-19 pandemic and resulting travel restrictions have complicated ICE's efforts. ICE first requested travel documents for Dias on February 28, 2020. An agreement between the United States and Cape Verde provides that, in response to such a request, Cape Verde generally will "verify and confirm the identity" of the person subject to removal within thirty days. However, due to the pandemic, such verification did not occur until July 6, 2020. Six more weeks passed before ICE obtained an itinerary scheduling Dias's removal for October 2, 2020. ICE forwarded the itinerary along with another request for travel documents, but it received no response.

A week before the scheduled removal, the respondent learned that the October 2nd flight had been cancelled. ICE communicates with the Embassy of Cape Verde regularly, and the respondent cites various ways in which circumstances in Cape Verde have improved in recent weeks and months. For example, a limited number of flights for "essential" travel between Cape Verde and Portugal have now resumed, as has some amount of public transportation within Cape Verde. The United States has downgraded its travel advisory for Cape Verde (from "Do Not Travel" to "Reconsider Travel," as Dias notes), and ICE is attempting to charter two or three flights to Cape Verde during the month of December. The respondent relies on these developments to suggest that ICE might be able to accomplish Dias's removal in the foreseeable future. However, no dates for potential removal flights have been identified, and no travel documents have issued for Dias.

---

[1] These efforts are outlined in submissions by the respondent that include declarations by Acting Supervisory Detention and Deportation Officer Gary Burcham and Supervisory Detention and Deportation Officer John Charpentier (both of ICE's Burlington, Massachusetts office), and Detention and Deportation Officer Joedie Scott (of the Removal and International Operations Unit at ICE Headquarters in Washington, D.C.). Doc. Nos. 6-1, 11-1, 11-2, 11-3, 13-1.

Meanwhile, Dias remains in civil immigration detention, where he has been for more than two years, nearly eleven months of which have elapsed since his order of removal became final. The respondent admits ICE has not successfully completed any removals of noncitizens to Cape Verde since the COVID-19 pandemic began.

Dias filed a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this Court on August 13, 2020. Doc. No. 1. He challenges his detention under Zadvydas v. Davis, 533 U.S. 678 (2001), alleging his detention is both prolonged and indefinite, and seeking release within seven days of an order allowing his petition. The respondent moved to dismiss Dias's petition on September 4, 2020, arguing it had made reasonable efforts to remove him and that his removal was likely to occur in the reasonably foreseeable future, citing the then-scheduled early October flight. Doc. No. 6. On September 30, 2020, Dias notified the Court he had learned the previous day that his removal flight had been cancelled, a fact the respondent confirmed in a subsequently filed status report. Doc. Nos. 10, 11. Thereafter, the Court ordered the respondent to provide information about the status of removals to Cape Verde generally since March 2020, the status of commercial flights operating between Cape Verde and the United States, and the basis for its belief that removals to Cape Verde would resume in the reasonably foreseeable future. Doc. No. 12. The respondent complied, Doc. No. 13, and Dias responded, Doc. No. 14. The Court has carefully considered all submissions by both parties.

In Zadvydas, the Supreme Court "recognize[d]" that six months is a "presumptively reasonable" period of time to detain an individual subject to a final order of removal, in order to effectuate his or her removal. 533 U.S. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut

3

that showing." Id.  Moreover, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.  Although the government is not required to release all individuals subject to removal at the expiration of six months, detention must end when "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Based on the record before the Court, this Court is satisfied that Dias has provided "good reason to believe that" his removal to Cape Verde is not reasonably foreseeable.  This showing arises from the facts alleged in Dias's petition, and is both corroborated and enhanced by the respondent's own submissions detailing ICE's unsuccessful efforts to obtain travel documents and effect Dias's removal to date due to atypical administrative delay and flight cancellations arising from persistent COVID-19-related travel restrictions.  It is further supported by ICE's inability to identify a date on which a flight is actually scheduled to depart from the United States bound for Cape Verde, its concession that air travel between the two nations remains "temporarily on hold," and its failure to explain why it has not successfully obtained the necessary travel documents for Dias from Cape Verde's Embassy irrespective of the status of commercial air travel to Cape Verde.

To be sure, ICE hopes that things will improve and the result of its efforts to remove Dias will be different by December, but nothing in the record—and nothing about the status of the pandemic and its progress generally—provides a basis to endorse ICE's optimism by permitting Dias's continued detention.  The respondent does not suggest Dias has in any way impeded or refused to cooperate with efforts to obtain his travel documents and accomplish his removal.  The mere prospect of a flight two months in the future, or in the reasonably foreseeable future, considered against the totality of the circumstances that have prevented Dias's removal between

November 2019 and now, simply is not sufficient.  This is especially the case where, as here, there are no facts submitted establishing a significant likelihood that a removal via commercial or chartered flight from the United States to Cape Verde in December will proceed as ICE proposes or that ICE will otherwise be able to effectuate Dias's removal in any reasonably foreseeable time.  That the circumstances presently interfering with the usual removal process are beyond ICE's control does not entitle ICE to prolong Dias's civil detention or avoid the established constitutional limits governing such detention.[2]

Accordingly, the motion to dismiss (Doc. No. 6) is DENIED, and Dias's petition (Doc. No. 1) is ALLOWED.[3]  **ICE shall RELEASE Dias from detention by Tuesday, October 20, 2020**, subject to whatever reasonable conditions of supervision it deems necessary to ensure his availability for and cooperation with continued efforts to effectuate his removal.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

---

[2] The Court observes that, had ICE initiated its efforts to effectuate Dias's removal in the immediate wake of the BIA's November 2019 order rejecting his appeal, rather than waiting until the end of February 2020 to do so, events might have unfolded very differently.

In addition, to the extent ICE suggests Dias is a threat to public safety because he was arrested on a criminal charge (and has a history of several previous arrests), even noncitizens are presumed innocent of such charges unless and until they plead guilty or are convicted at trial.  As the respondent's submissions demonstrate, most of Dias's arrests have resulted in dismissed charges.  Thus, even assuming without deciding that the court could deny release on this basis, the record evidence fails to support the contention.  Similarly, to the extent ICE suggests Dias should not be released due to a history of failing to appear in state court to face criminal charges, that is a consideration bearing on ICE's determination of what conditions are necessary to impose when it releases Dias in compliance with this Order; it is not a basis upon which this Court can deny release under Zadvydas.

[3] In these circumstances and on this record, no further information or argument is necessary to resolve the merits of Dias's petition.